# EXHIBIT 8

SUPREME COURT- STATE OF NEW YORK
COUNTY OF NASSAU

Present: HON. FRANCIS RICIGLIANO
         Supreme Court Justice
_____X

In the Matter of the Application of,

LONG ISLAND ROLLER REBELS,                              **DECISION and ORDER**

                       Petitioner,                      PART 26

        -against-                                       INDEX NO.:604254/2024

BRUCE BLAKEMAN, in his official capacity as             Motion Seq. 1
NASSAU COUNTY EXECUTIVE, and COUNTY
OF NASSAU,

                       Respondents.

For a Judgment Pursuant to Article 78 of the Civil
Practice Law and Rules
_____X

_____
The following papers were read on this motion                NYSCEF DOCS

Order to Show Cause, Petition, Affirmation, Exhibits, etc. ...................... 1 - 24, 27, 29;

Answer, Memorandum of Law, etc. ......................................................... 31 - 32;

Affirmation in Reply, etc. ......................................................................... 33 - 34.

_____

This matter concerns a Petition by the Long Island Roller Rebels ("the Roller Rebels") for a judgment pursuant to CPLR 7803 and 7806 against Bruce Blakeman, in his official capacity as the Nassau County Executive ("the County Executive"), and the County of Nassau ("the County").

Page 1 of 13

Petitioner claims that County Executive Order Number 2-2024 ("the Executive Order") violates New York State Human Rights Law (Executive Law Section § 296) and New York Civil Rights Law § 40-c, and that in issuing and enforcing the Executive Order, the Respondents have made a determination affected by error of law (CPLR 7803 [3]) and/or proceeded in excess of jurisdiction (CPLR 7803 [2]).[1] The Petitioner asks this Court to issue preliminary relief enjoining enforcement of the Order during the pendency of this action, permanent relief enjoining and vacating the Executive Order and a declaration that the Respondents' actions violated the New York State Human Rights Law (Executive Law § 296), and New York Civil Rights Law § 40-c.

As is explained more fully below, the Court finds the County Executive did not have the authority to issue the Executive Order. As such, it cannot be enforced.

### Factual Background

On February 22, 2024, the County Executive signed the Executive Order titled "An Executive Order for Fairness for Women and Girls in Sports." The Executive Order relates to the process for applying for and securing a permit to utilize Nassau County Parks property for "the purposes of organizing a sporting event or competition." The Executive Order requires that any permit applicant seeking to use Nassau County Parks property for a sporting event or competition must expressly designate whether the team members/participants of the sporting event or competition are (1) males, men, or boys; (2) females, women, or girls; or (3) coed or mixed, including both males and females "based upon the biological sex at birth of the team

---

[1] In their Reply Memorandum of Law in Support of Petitioner's Verified Petition Seeking a Judgment Pursuant to Article 78 and Seeking a Preliminary Injunction ("Reply Memorandum"), the Petitioner withdrew their argument that the County Executive proceeded "in excess of jurisdiction" and asked this Court to decide the "error of law" question only. *See* Reply Memorandum at 10, n 6).

Page 2 of 13

members/participants." Additionally, the Executive Order prohibits the Nassau County Department of Parks, Recreation and Museums ( the "Parks Department") from issuing a permit for any sporting event or competition designated for "females, women, or girls" that allows "biological males" to participate, but allows the Parks Department to issue permits for sporting events or competitions designated for "males, men, or boys" that include participation by "biological females." Finally, the Executive Order defines "gender" as "the individual's biological sex at birth," and it permits the Parks Department to consider a birth certificate as identification of a participant's sex only when the birth certificate was filed at or near the time of the participant's birth.

    The Executive Order sets forth the underlying rationale behind its issuance as follows:

> WHEREAS, Women and Girls deserve the opportunity to demonstrate their strength, skills, and athletic abilities to provide them with equal and fair opportunities to obtain recognition and accolades, college scholarships, and the numerous other long-term benefits that result from participating and competing in athletic endeavors; and
>
> WHEREAS, historically, Women and Girls have not received as many of the opportunities emanating from participation in sports as biological males; and
>
> WHEREAS, it is imperative that a supportive and safe environment is maintained to foster and nurture these opportunities in sports for biological females; and
>
> WHEREAS, Women and Girls hard work, on-field achievements, and athletic futures deserve to be fostered, nurtured, and celebrated; and
>
> WHEREAS, the designation of separate sex-specific athletic teams or sports is necessary to maintain fairness for women's athletic opportunities; and

> WHEREAS, the County of Nassau is committed to protecting Women's and Girl's rights to compete athletically and to realize the opportunities of participating in a fair sporting competition.

The Executive Order also sets forth the County's Executive statement as to the legal authority to issue the Executive Order, *to wit*, "the Nassau County Charter and the Laws of the State of New York, and all other applicable laws."

According to the Petition, the Roller Rebels are a women's flat track roller derby league based in Nassau County, and are a member of the Women's Flat Track Roller Derby Association. *See* Petition at ¶¶ 52, 60. The league is "committed to inclusive policies and anti-discrimination principles" and they "welcome all transgender women, intersex women, and gender-expansive women to participate." *Id.* at ¶ 56. As such, the Roller Rebels do not inquire about the sex assigned at birth of their players. *Id.* at ¶ 57. The Petitioner asserts that the effect of the Executive Order is to prohibit trasngender women and girls, as well as any women's and girls' sports teams that include them, from participating in women's and girls' sporting events on Nassau County Parks property. Transgender women and girls are only permitted to participate in sporting events designated as "male" or "coed." By contrast, the text of the Executive Order permits transgender men and boys to participate in any sporting events on Nassau Parks property, whether the events are designated as "female," "male," or "coed." The Petitioner currently has at least one league member who would be prohibited from participating in the league under the Order. *Id.* at ¶ 58.

The Roller Rebels maintain that it is currently organizing a series of upcoming women's roller derby expo games at Nassau County Parks athletic facilities. *Id.* at ¶ 63. The league also hosts an annual roller derby event in November, which it wants to and intends to host at a Nassau

County Parks athletic facility. *Id.* at ¶ 64. The Roller Rebels submit that, on March 11, 2024, the league applied for a permit to host an upcoming series of quarterly games at Nassau County Parks athletic facilities that are suitable for skating. The Roller Rebels specifically requested to use the roller rink at Cedar Creek Park, with the roller rink at Eisenhower Park as an alternative, or the basketball courts at Cedar Creek Park, Eisenhower Park, or Wantagh Park as other alternatives. *Id.* at ¶ 65.

On May 7, 2024, the Court conducted a limited hearing on Petitioner's request for a preliminary injunction.[2] Respondents admitted at the hearing that Nassau County Department of Parks will deny the Petitioner's request for a permit. *See also* Respondent's Verified Answer at ¶ 67, which admits the corresponding allegation at ¶ 67 of the Verified Petition ("Because the Roller Rebels allow transgender women to participate on their team, their permit request violates the terms of the Order, and the Parks Department will be required to deny their request to access Nassau County Facilities.").

### The Procedural Nature of the Action

Article 78 of the CPLR provides an expeditious and essentially uniform procedure for judicial review of matters that were cognizable at common law under the prerogative writs of certiorari, mandamus and prohibition.

> "For the most part, Article 78 proceedings are used to challenge action (or inaction) by agencies and officers of the state and local government...

---

[2] Following this Court's signing of the Order to Show Cause which sought the preliminary injunction on March 13, 2024, Respondents removed this matter to the United States District Court Four of the Eastern District of New York on April 12, 2024. *See* NYSCEF Doc. 41. Petitioner then successfully moved before that Court for an Order remanding this matter back to this Court by Decision and Order of United States District Judge Allyne R. Ross, dated April 25, 2024. *See* NYSCEF Doc. 42.

Page 5 of 13

> It bears emphasizing, however, that although Article 78 'abolished' the writs of certiorari, mandamus and prohibition, the new Article [created in 1937 as part of the Civil Practice Act] did not alter the substantive law upon which these writs were based.
>
> ... [T]he availability of a remedy under Article 78 is still dependant upon a showing by the petitioner that he or she has a right to relief under the substantive law of certiorari, mandamus or prohibition. It is therefore common for courts and litigants to denominate a particular Article 78 proceeding as one which is 'in the nature of' certiorari, mandamus or prohibition, as the case may be.
>
> The instant Article 78 proceeding is in the nature of mandamus review. 'Mandamus to review is the modern name for judicial review of administrative determinations involving the exercise of discretion.' While certiorari is in the form of review of a 'judicial or quasi judicial' determination after a legally required trial type hearing, when a determination is 'administrative' and involves a judgment or discretion made in the absence of such a hearing, mandamus to review is appropriate. The standard of review in the instant mandamus proceeding is whether the determination was 'arbitrary and capricious' or 'affected by an error of law' as opposed to the 'substantial evidence' standard required in certiorari proceedings."

(*Bursac v. Suozzi*, 22 Misc 3d 328, 322-333 [Sup Ct, Nassau County 2008][internal citations omitted]).

In the instant proceeding, Petitioner seeks a review of the County Executive's Order which effectively prohibits transgender women and girls who are deemed biological males from participating in women's and girls' sporting activities at County run facilities. Thus, the instant Article 78 proceeding is in the nature of mandamus review.

The Petitioner in this proceeding maintains that the issuance of the Executive Order is affected by an "error of law," a term not otherwise defined in CPLR Article 78 (*see Matter of Moscatelli v. New York City Police Dept.*, 2022 NY Slip Op 34393[U], **7, 2022 WL 17958950, *4 [Sup Ct, New York County 2022]["Courts have rarely singled out error of law by name...as a question for consideration in an Article 78 proceeding"]). "The question of whether an

Page 6 of 13

administrative agency's determination is affected by an error of law is often implicit in the nature of the grievance," and often turns on the substantive law applicable to the determination (*Id.* at **7, *4, citing *Matter of Held v. State of New York Workers' Compensation Bd.* 2008 NY Slip Op 52741[U], 2008 NY LEXIS 10881 [Sup. Ct. Albany County 2008]). Relatedly, it can also be based, as will be discussed more fully here, on whether the County Executive erred under the law by encroaching on the power of another branch of the government (*See e.g. Bursac v. Suozzi, supra*).

### Analysis

In their respective submissions to the Court, the parties devote much attention to the issues of transgender persons' participation in sports, women's and girls' rights under the Equal Protection Clause of the United States Constitution, and whether the Executive Order violates the New York State Human Rights Law (Executive Law § 296) and New York Civil Rights Law § 40-c.[3] However, the Court must first consider whether the County Executive had the authority to issue the Executive Order without any corresponding action by the County Legislature. Court of Appeals precedent clearly indicates that he did not.

"One of the fundamental principles of government underlying our Federal Constitution is the distribution of governmental power into three branches-the executive, legislative, and

---

[3] Prior to removing this matter to the United States District Court Four of the Eastern District of New York on April 12, 2024 (*see* NYSCEF Doc. 41), Respondents filed an amended Verified Answer with Objections to Points of Law on April 10, 2024 (*see* NYSCEF Doc. 37), and an amended Verified Answer with Objections to Points of Law and Counter Claims on April 11, 2024 (*see* NYSCEF DOC. 39). As those supplemental papers were not provided for in the Order to Show Cause signed by this Court on March 13, 2024, or in the briefing schedule set forth by this Court in conference with counsel, and Respondents did not seek leave of the Court to file the same, the Court has not considered NYSCEF Docs. 37 and 39. In any event, the arguments raised in those filings do not impact this Court's analysis here.

Page 7 of 13

judicial-to prevent too strong a concentration of authority in one person for body." (*Under 21 v. City of New York*, 65 NY2d 344 [1985], *accord Montano v. County Legislature of County of Suffolk*, 70 AD3d 203 [2d Dept 2009]). "Free government consists of three departments, each with distinct and independent powers, designed to operate as a check upon those of the other two co-ordinate branches. The legislative department makes the laws, while the executive executes, and the judiciary construes and applies them. Each department is confined to its own functions, and can neither encroach upon nor be made subordinate to those of another without violating the fundamental principal of a republican form of government." (*Bursac, supra,* citing *In Re Davies, Attorney General,* 168 NY 89, 61 NE 118, 56 LRA 855, 32 NY Civ. Proc. R 163 [1901]). This principle of separation of powers is included by implication in the pattern of government adopted by the State of New York (*Under 21 v. City of New York*, 65 NY2d 344, 355 [1985], citing *Matter of of Laguardia v. Smith*, 288 NY 1 [1942], *Matter of County of Oneida v. Berle*, 49 NY2d 515 [1980]). "While the doctrine of separation of powers does not require the maintenance of three airtight departments of government, it does require that no one branch be allowed to abrogate unto itself powers residing entirely in another branch." (*Under 21,* at 356.)

Certainly, the pattern of government established for Nassau County by the Nassau County Charter is not entirely identical to state government established by the New York State Constitution. Still, it does provide for distinctive legislative (Article I), executive (Article II), and judicial branches (Article XXIV). Moreover, while Article 9, Section 2 (c) of the New York State Constitution provides that every local government shall have the power to adopt and amend laws regarding safety, health and well-being of persons therein, the Nassau County Charter § 102 explicitly provides that "[t]he legislative power of the County shall be vested in the County

Page 8 of 13

Legislature." Additionally, the County Legislature has "the power to adopt, amend, and repeal ordinances for the purpose of making effective any of the provisions of this act and to carry out all powers conferred upon the County or the County Legislature by any other law..." *See* Nassau County Charter at § 103.5. The County Executive, on the other hand, is the Chief Executive of the County, and has the duty to "supervise, direct, and control, subject to the provisions of the act, the administrations of all departments, offices and functions of the County government." *See* Nassau County Charter at § 203.1. The County Executive also has the power to approve ordinances and generally "[n]o ordinance or resolution...shall take effect until the same has been approved by the County Executive." *See* Nassau County Charter at § 107.

In their Opposition, the Respondents rely on the County Executive's duty to "supervise, direct and control, subject to the provision of the act, the administration of all departments, offices and functions of county government, and, in addition to such other powers as may be necessary to maintain the efficient operation of county government, to develop, maintain and administer services on a county wide basis that are common needs of all departments of county government." The Respondents maintain these duties give the County Executive the power to restrict women's and girls sporting teams which use Nassau County facilities to biological females on the basis of protecting women's and girls' rights to compete athletically. However, precedent has repeatedly established that an executive cannot enact his/her own view of what persons should be protected from discrimination without regard to laws enacted by the legislature.

The Court of Appeals' decision in *Under 21 v. City of New York*, 65 NY2d 344, is instructive and controlling. *Under 21* involved an executive order signed by then New York City

Page 9 of 13

Mayor Edward Koch that required persons entering into contracts with the city to ensure "equal employment opportunity" in their employment decisions, including not discriminating on the basis of "sexual orientation or affectional preference." Pursuant to this grant of authority, the city agency promulgated regulations requiring that specific language implementing the executive order be inserted into contracts with the city. This contract provision required a contractor to agree, *inter alia,* not to discriminate in any employment decision on the basis of "sexual orientation or affectional preference." The *Under 21* plaintiffs objected, and advised the city they would not sign contracts which contained this condition. The city, in turn, notified the plaintiffs that the contracts for the services they provided would not be renewed unless they signed the contracts containing the clause.

The Court of Appeals invalidated the executive order, finding that Mayor Koch exceeded his authority in issuing it. The Court held that, regardless of the mayor's good intentions behind the signing of the order, "the mayor [*i.e.*, the executive] could not unlawfully infringe on the rights of the city council [*i.e.*, the legislature]." *(Id.* at 355.) In doing so, the Court acknowledged that under the city charter, the mayor had all the residual powers of the city, including the power to enter into contracts on the city's behalf. But, that power did not confer the ability to utilize a remedial device which, rather than implementing a legislative policy, enacted a new policy not embraced by the legislature. *Id.* Thus, the Court held that "an executive may not usurp the legislative function by enacting social policies not adopted by the legislature." *(Id.,* citing *Matter of Broidrick v. Lindsay,* 39 NY2d 641 [1976][executive action in entering legislation may not go beyond state legislature policy and proscribe a remedial device not embraced by the policy] and *Matter of Fullilove v. Beame,* 48 NY2d 376 [1979][executive does not have the power to initiate

Page 10 of 13

affirmative action without legislative authorization]). The Court added that private employers in this State are free to make employment decisions on whatever basis they choose as long as it is not prohibited by law." *(Id.* at 359.)

The same reasoning applies here. It is axiomatic that the chief executive of a local government cannot unlawfully infringe upon the legislative powers reserved for the legislature. *Id., supra.* Certainly, if the Nassau County Legislature were to pass legislation pertaining to "protecting and promoting athletic opportunities for women and girls" by prohibiting biological males from participation in girls' or women's sports, then the County Executive would have the power to enforce it - subject, of course, to any claims that the law was unconstitutional or violated a state or federal statute. Some legislatures have in fact enacted such laws.[4] The Nassau County legislature has not. Nor has New York State. Nor has Congress. Accordingly, like the contractors in *Under 21, supra,* the Roller Rebels, and any other private permit seeker, are free to allow persons on their teams on whatever basis they choose, as long as that basis is not prohibited by law.

## Conclusion

With the stated goal of protecting women's and girls' rights to compete athletically, the County Executive issued an Executive Order aimed at preventing transgender women from

---

[4] *See e.g.* Florida SB 1028 (requiring that sex in consideration for athletic participation in interscholastic, intercollegiate, intermural and club public school settings be established by official birth certificate, which was filed at birth); Indiana HB 1041 (prohibiting athletes assigned male at birth to participate in girls sports from kindergarten through high school graduation); Iowa House File 2416 (prohibiting transgender girls and women from participating in high school and women's college athletics); and Mississippi SB 2536 (stating that student athletes assigned male at birth may not participate in girls sports in public elementary, middle, high school, or college).

participating in girls' and women's athletics at Nassau County parks, despite there being no corresponding legislative enactment providing the County Executive with the authority to issue such an order. In doing so, this Court finds the County Executive acted beyond the scope of his authority as the Chief Executive Officer of Nassau County.

CPLR Article 7806 provides that the Court may award Petitioner "the relief to which [they] are entitled," including a judgment to "annul or confirm the determination in whole or in part" and may "direct or prohibit specified action" by the Respondents. Accordingly, judgment is awarded to Petitioner vacating and permanently enjoining enforcement of the Executive Order.

To the extent the Petitioner also seeks a declaration that the Respondents' actions violated New York State Human Rights Law (Executive Law § 296) and New York Civil Rights Law § 40-c, inasmuch as this Court has granted a judgment permanently enjoining the enforcement of the Executive Order, such relief is denied as moot and the Court otherwise declines to convert this action into one for declaratory judgment. *See* CPLR 103 (c).

To the extent the Petitioner has also sought, by Order to Show Cause, an interim order enjoining the enforcement of the Executive Order during the pendency of the action, and declaring the Petitioner has no obligation to comply with the Executive Order prior to a determination by this Court of the Article 78 Petition, in view of the instant Decision and Order on the Petition, the request for a preliminary injunction is also denied as moot.

Accordingly, it is hereby

ORDERED, that the Petition is granted to the extent Petitioners are awarded a judgment vacating and permanently enjoining Respondents from enforcing Nassau County Executive Order 2-2024; and it is further

ORDERED, that Petition and Order to Show Cause are otherwise denied as moot.

This constitutes the Decision and Order of this Court. Any and all relief not specifically addressed herein is denied.

Dated: May 10 2024

ENTER:

*[signature]*

HON. FRANCIS RICIGLIANO, J.S.C.

**ENTERED**
May 14 2024
NASSAU COUNTY
COUNTY CLERK'S OFFICE